Davis v. United States                    04-CV-273-SM  12/19/05
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Mary C. Davis, Executrix of
the Estate of Kenneth Freeman,
      Plaintiff

      v.                                   Civil No. 04-cv-273-SM
                                           Opinion No. 2005 DNH 168
United States of America,
      Defendant


                          **O R D E R**


      Plaintiff, the executrix of the estate of Kenneth Freeman,

sues for a tax refund of approximately $506,000.  The legal

question presented is how the decedent's state lottery winnings

(in the form of 10 annual payments of approximately $209,000)

should be valued for estate taxation purposes.  The government

argues that the right to ongoing lottery payments is properly

valued by reference to the annuity tables set out in the Internal

Revenue Code ("IRC"), yielding a taxable value of approximately

$1.6 million.


      Plaintiff, on the other hand, notes that the estate's right

to receive future lottery payments is, by law, non-assignable and

argues that the asset is necessarily less valuable than it would

be if it were freely transferable.  Accordingly, says plaintiff,
reference to the annuity tables produces a distorted and over-
stated value for tax purposes.  Based on an expert's appraisal,
plaintiff asserts that the asset should be valued at
approximately $800,000 for estate tax purposes.

Pending before the court are the parties' cross motions for
summary judgment with respect to the method properly used to
value future lottery receipts for estate tax purposes.

### Standard of Review

When ruling on a party's motion for summary judgment, the
court must "view the entire record in the light most hospitable
to the party opposing summary judgment, indulging all reasonable
inferences in that party's favor."  Griggs-Ryan v. Smith, 904
F.2d 112, 115 (1st Cir. 1990).  Summary judgment is appropriate
when the record reveals "no genuine issue as to any material fact
and . . . the moving party is entitled to a judgment as a matter
of law."  Fed. R. Civ. P. 56(c).  In this context, "a fact is
'material' if it potentially affects the outcome of the suit and
a dispute over it is 'genuine' if the parties' positions on the

issue are supported by conflicting evidence." <u>Intern'l Ass'n of</u>
<u>Machinists and Aerospace Workers v. Winship Green Nursing Ctr.</u>,
103 F.3d 196, 199–200 (1st Cir. 1996) (citations omitted).

Here, the parties agree to nearly all material facts
underlying this dispute and suggest that the case is appropriate
for summary disposition.  As will be discussed below, however,
there is at least one fact that is both material and genuinely
disputed, precluding the entry of summary judgment in favor of
either party.

## Background

In 1989, the decedent, Kenneth Freeman, won the
Massachusetts lottery and received the first of 20 annual
payments of $209,220 from the Commonwealth of Massachusetts.
Slightly more than nine years later (after receiving 10 annual
payments from the Commonwealth), the decedent died.  Upon his
death, the remaining 10 annual payments became payable to
decedent's estate.  The Commonwealth of Massachusetts has
continued to make those annual payments to the estate.

At the time of his death, Mr. Freeman was a resident of Somersworth, New Hampshire.  His federal estate tax return, filed on February 1, 2000, reported a tax due of $520,012, a prior payment of $530,624, and a refund due of $10,612.  On Schedule F, Item 12 of the return, the estate disclosed the remaining 10 annual payments due from the Commonwealth as an asset of the estate.  The estate valued that asset at $1,584,690, based upon the annuity tables found in section 7520 of the IRC.  26 U.S.C. § 7520.

Subsequently, the Internal Revenue Service audited the estate's return and determined that the value of the 10 remaining payments from the Commonwealth was slightly higher, at $1,607,164.  The reason for that discrepancy is not material – it resulted from a minor computational error by the estate.  Both parties agree that, if the court decides that the value of the annuity payments must be determined by reference to the annuity tables in the IRC, the correct value of the asset is $1,607,164.

As a result of the changes made by the IRS to the decedent's tax return (including revaluation of the lottery annuity), the

estate's tax liability was actually reduced from $520,012 to $506,622.  Nevertheless, the executrix had second thoughts about how the lottery annuity had been valued (by both the estate itself and the IRS).  She determined that reference to the IRC annuity tables was not appropriate under the circumstances.  On December 28, 2001, the estate filed an informal claim for refund, asserting that the correct value of the remaining 10 annuity payments for estate tax purpose was $800,000 (roughly half the value ascribed to it by the IRS auditor).

The estate explained the difference by pointing out that the annuity tables (employed by the IRS and used by the estate when it filed its initial return) fail to take into account the fact that the estate's right to receive the annual lottery payments is a non-marketable asset.  That is to say, the right to receive those payments cannot be sold, assigned, pledged as collateral, or otherwise transferred.  Consequently, says the estate, that asset has a significantly lower fair market value than the tables establish.

The estate's informal claim for a tax refund was denied on November 21, 2002.  It then filed this timely suit seeking a tax refund.

The parties have stipulated that the 10 future payments owed by the Commonwealth to the decedent on the date of his death constitute an "annuity" within the meaning of sections 2039 and 7520(a) of the IRC.  They also agree that the decedent's interest in those payments was an "ordinary annuity interest" within the meaning of the Estate Tax Regulation set forth in 20 C.F.R. § 20.7520-3(b)(1)(i)(A).  Finally, the parties agree that, at the time of the decedent's death, the remaining 10 lottery payments due to him were neither marketable nor assignable.

**Discussion**

As noted above, the issue before the court is a legal one: the proper means by which to determine the estate tax value of the 10 remaining lottery payments due from the Commonwealth of Massachusetts.  See, e.g., Cook v. Comm'r of Internal Revenue, 349 F.3d 850, 853 (5th Cir. 2003) ("Mathematical computation of

fair market value is a factual issue; however, determination of
which is the proper valuation method is a question of law.").

I.   <u>The Estate Tax in General</u>.

The IRC imposes a tax on "the transfer of the taxable estate
of every decedent who is a citizen or resident of the United
States."  26 U.S.C. § 2001(a).  For tax purposes, a decedent's
estate includes "the value at the time of his death of all
property, real or personal, tangible or intangible, wherever
situated."  26 U.S.C. § 2031(a).  The pertinent tax regulations
make clear that all assets included in the decedent's estate are
valued at their "fair market value," which is defined to mean
"the price at which the property would change hands between a
willing buyer and a willing seller, neither being under any
compulsion to buy or sell and both having reasonable knowledge or
relevant facts."  26 C.F.R. § 20.2031-1(b).

The estate's claim appears to be this: a well-informed buyer
would be willing to pay substantially less for an identical
annuity that he or she could not sell or assign than that same
buyer would be willing to pay for an identical annuity that could

7

be sold or assigned.  In other words, that buyer (as well as the broader market itself) would ascribe some value to the power to sell, encumber, or otherwise transfer the annuity and, therefore, would be willing to pay more for it.  And, critically, the estate says the annuity tables in section 7520 of the IRC fail to take into account the diminished market value of a non-marketable annuity, as compared to a marketable one.

II.  Differing Approaches to Valuing the Annuity.

Only a few courts have considered this narrow legal question.  The Court of Appeals for the First Circuit is not one of them.  Among those that have considered the issue, there is disagreement over the proper way to value a non-transferable right to receive lottery winnings (in the form of guaranteed annual payments).  The Courts of Appeals for both the Ninth and Second circuits have concluded that the annuity tables do not accurately reflect the fair market value of future lottery payments to the extent they fail to account for the annuities' lack of marketability.  See Shackleford v. United States, 262 F.3d 1028 (9th Cir. 2001); Estate of Gribauskas v. Comm'r of Internal Revenue, 342 F.3d 85 (2d Cir. 2003).

8

The Court of Appeals for the Fifth Circuit (with one judge dissenting from a panel opinion), joined by the district court in Massachusetts (Woodlock, J.), have concluded that lottery annuity payments are properly valued by reference to the IRC annuity tables.  See Cook, 349 F.3d at 855-57 (5th Cir. 2003); Estate of Donovan v. United States, 2005 WL 958403 (D. Mass. April 26, 2005).  See also Anthony v. United States, 2005 WL 1670697 (M.D. La. June 17, 2005) (concluding that, for estate tax purposes, a non-marketable structured settlement annuity must be valued by reference to the IRC annuity tables, without any discount to account for the asset's lack of marketability).

III.  "Fair Market Value" vs. "Present Value".

As noted above, the parties have stipulated that the "10 payments due the plaintiff on the date of his death from the Commonwealth of Massachusetts constitute an annuity within the meaning of Internal Revenue Code Section 2039 and 7520(a) and the decedent's interest in those payments was an ordinary annuity interest within the meaning of Estate Tax Regulation § 20.7520-3(b)(1)(i)(A)."  Stipulation of Facts for Summary Judgment, Exhibit 1 to plaintiff's motion for partial summary judgment

(document no. 7).  Accordingly, for estate tax purposes, the general rule provides that the annuity must be valued by reference to the IRC annuity tables.  <u>See</u> 20 C.F.R. § 20.7520-1(a) ("[I]n the case of estates of decedents with valuation dates after April 30, 1989, the fair market value of annuities . . . is their present value determined under this section.").

There is, however, an exception to the general rule.  As the Court of Appeals for the Fifth Circuit has observed:

> The applicability of the annuity tables is not, however, unassailable.  They must be used to value annuities unless it is shown that the result is so unrealistic and unreasonable that either some modification in the prescribed method should be made, or complete departure from the method should be taken, and a more reasonable and realistic means of determining value is available.

<u>Estate of Cook</u>, 349 F.3d at 854 (citations and internal punctuation omitted).  So, justify a departure from the annuity tables, plaintiff bears the burden of demonstrating that: (1) the value ascribed by the tables to the decedent's annuity is "unrealistic and unreasonable," and (2) there is a more reasonable and realistic means by which to determine its fair market value.

The problem illustrated by cases of this sort – those
involving non-assignable annuities – is that the IRC annuity
tables take into consideration only two factors: time and a
discount interest rate.  See Shackleford, 262 F.3d at 1031 ("The
IRS has explained that the 'valuation factors for determining the
present value of interests measured by a term certain are based
on two components: a term of years component and an interest rate
component.'") (quoting Tax Notice 89-24, 1989-1 C.B. 660).
Consequently, those tables provide what is generally known as the
"present value" of an annuity.  That is to say, by using the
tables, one can determine the lump-sum amount that, if invested
today, together with interest earnings (at the assumed rate of
interest), would be enough to meet each of the payments as it
fell due and, at the time of the last payment, the invested fund
would be exactly zero.  But, as noted above, for estate tax
purposes, the focus is necessarily on an asset's "fair market
value," rather than its "present value."

In most cases an annuity's "present value" is roughly
equivalent to its "fair market value."  That is to say, the
present value of a marketable annuity is close to the lump sum

11

that a well-informed buyer would be willing to pay for the right
to receive that periodic stream of payments.  Presumably, that is
why the tax regulations equate present value with fair market
value.  <u>See</u> 20 C.F.R. § 20.7520-1(a).  Of course, routine use of
the annuity tables is also justified as a simple, cost-effective,
consistent, and, generally speaking, reliable means by which to
calculate an annuity's fair market value, without the need to
call upon the opinion of valuation experts.  <u>See, e.g.</u>, <u>Cook</u>, 349
F.3d at 854 ("[F]or the property interests subject to § 7520 and
the accompanying regulations, the sometimes wide variation
produced by experts' fair market valuation methods gives way to
certainty provided by the valuation tables.").

    Importantly, however, the attributes of predictability,
consistency, and efficiency must give way when the prescribed
valuation method produces a result that is "unrealistic and
unreasonable."  And, the accuracy and reliability of the IRC
annuity tables falls into some question when dealing with non-
assignable, non-marketable annuities.  The present value of a
non-marketable annuity is not necessarily representative of its
fair market value because the tables have, by virtue of their

very structure and assumptions, failed to take into consideration
the fact that the annuity is non-marketable.  A hypothetical
buyer would naturally be willing to pay less for a non-marketable
annuity than he or she would be willing to pay for a marketable
one.  "The right to transfer is one of the most essential sticks
in the bundle of rights that are commonly characterized as
property.  It is axiomatic that if an asset's marketability is
restricted, it is less valuable than an identical marketable
asset."  <u>Shackleford</u>, 262 F.3d at 1032 (citations and internal
punctuation omitted).

     The <u>Donovan</u> court acknowledged as much, noting that, "Surely
if one could receive a lump sum payment for a freely assignable
right to the future payments, it potentially would have greater
worth than it does as an unassignable right to payments which may
not be accelerated [or assigned, or sold]."  <u>Donovan</u>, at *5.
This court cannot agree, however, with the conclusion the <u>Donovan</u>
court derived from that statement: "But these factors do not make
the interest less valuable (at least to the decedent) than the
sum of the guaranteed payments discounted for the time value of
money as embraced by the annuity tables."  <u>Id</u>.  That view, it

seems, mistakenly equates the "present value" of a non-marketable

asset with its "fair market value," something that, at least at

this juncture, this court is unwilling to do.[1]

    In this case, the nonmarketable right to receive 10 future

payments from the Lottery Commission is less valuable than if the

right were freely alienable.  Or, stated differently, it's fair

_____

    [1]    As noted above, the Court of Appeals for the Fifth
Circuit concluded that the "non-marketability" of an annuity is
not a relevant factor when determining its fair market value and,
therefore, reference to the annuity tables is appropriate.  The
court bolstered its conclusion that use of the annuity tables is
appropriate in cases such as this by observing that "the non-
marketability of a private annuity is an assumption underlying
the annuity tables."  Cook, 349 F.3d at 856 (emphasis supplied).
That view was shared by the Donovan court.  Donovan, 2005 WL
958403 at *5.  I disagree.  The tables are not designed to
account for whether an annuity is marketable or not marketable.
They take into account only two factors: an assumed interest rate
and the length of time over which the annuity payments will be
made.  Thus, it is incorrect to say that the tables "assume" the
non-marketability of the underlying assets.  They do not.
Marketability is simply not relevant to the function of the
annuity tables (though it would be closer to the mark to suggest
that if the tables "assume" anything on the subject, they assume
marketability of annuities).  The "present value" of an annuity,
as calculated by those tables, will closely approximate its "fair
market value" when the annuity happens to be marketable.  And,
contrary to what is suggested by Cook, those tables are less
accurate in gauging fair market value when an annuity is non-
marketable.  That the tax regulations provide that certain non-
marketable assets should be valued by reference to the IRC
annuity tables, see defendant's memorandum (document no. 9) at
16, does not alter economic reality: non-marketable assets have
an inherently lower fair market value than marketable ones.

market value is less than its present value, as determined by the
IRC tables.  First, as noted by the <u>Gribauskas</u> and <u>Shackleford</u>
courts, the annuity's lack of marketability makes it inherently
less valuable because the right to receive annual payments cannot
be converted into, say, an immediate lump sum payment, which sum
could then be put to any number of uses.  To deny that the
annuity's lack of marketability has an effect on its fair market
value (as distinguished from its "present value") is to ignore
one of its essential characteristics; the non-marketability of
that annuity has an unquestionable (and potentially material)
impact on its fair market value.

The annuity's lack of marketability has another, perhaps
more tangible, negative effect on the estate.  Because the estate
cannot simply sell the annuity to a third party for its fair
market value and then distribute that lump sum to the estate's
beneficiaries, it might well be forced to remain open to
administer the annual receipts from the Lottery Commission.  <u>See,
e.g.</u>, N.H. Rev. Stat. Ann. 564:19.  As a result, the estate will
likely incur additional administrative and legal expenses that it
could otherwise avoid.  Plainly, the estate would be forced to

incur those additional continuing expenses because of the
annuity's non-marketable character.

IV.  The Estate's Burden: Unrealistic and Unreasonable Valuation.

Having determined that the annuity tables (1) do not take
into account a "lack-of-marketability" factor in calculating an
annuity's present value, (2) that the fair market value of a non-
marketable annuity is necessarily less, to some degree, than its
present value, and (3) that the IRC annuity tables are not
necessarily an accurate measure of a non-marketable annuity's
fair market value, the court must next determine whether the
estate has carried its burden of demonstrating, as a matter of
law, that an alternate means of valuing the annuity must be used.
It has not.

Although the parties have agreed to the correct value of the
annuity if determined by applying the annuity tables, they have
not agreed upon a taxable value if a different valuation method
is used.  And, while the estate's expert has opined that the
annuity's fair market value is $800,000, that opinion is
presumably contested by the government.  Until that disputed

factual question is resolved – the correct tax value under
alternate valuation methods – the court cannot determine whether
plaintiff has carried her burden of demonstrating that the value
yielded by the IRC tax tables is "unreasonable and unrealistic."

    At this juncture, all the court can conclude is that the
"present value" of the annuity (as determined by the IRC annuity
tables) is likely to be higher than its "fair market value."
That conclusion might suggest that to properly value the annuity
in this case reference to the IRC annuity tables is
inappropriate.  But, any discrepancy between the IRC tables and
the "true" fair market value of the annuity in question does not
necessarily compel the conclusion that it is improper to employ
those tables.  Using a valuation method <u>other</u> than the annuity
tables is only warranted if the difference between the value
yielded by the IRC tables and the value determined by an
alternate valuation method is sufficiently substantial to warrant
the conclusion that the IRC annuity tables produce an
"unreasonable and unrealistic" value.  Given the existence of a
genuinely disputed material fact (i.e., the fair market value of
the annuity if another, reliable valuation method is used), the

court cannot determine the proper valuation method as a matter of law.

## Conclusion

As the disagreement among respected courts illustrates, resolution of this legal issue is difficult.  In many respects one's view on the subject is a function of the perspective taken. One might consider the annuity as simply the right to receive an ongoing stream of fixed payments over a specified time.  It is difficult to conceive of such a right as having a "fair market value."  It is what it is: a right to receive defined cash payments over a defined period.  Consequently, its "present value" can be readily (and accurately) expressed as a lump sum value by reference to the tables.  This is not unlike reducing an individual's projected earnings over the course of his or her career to a lump sum or present value.  And, it is not at all unreasonable to say that an individual's projected earnings of, say, $1.5 million over his working life is "worth" a fixed amount in current dollars.  A "marketability" factor simply has no place in that kind of calculation.  Yet, we accept that the two assets – the lump sum payment and the stream of periodic payments over

time – are equal in value.  This appears to be the view embraced by the Cook and Donovan courts.

If, on the other hand, the court takes a different perspective and views the asset as an "annuity" (rather than simply the right to receive periodic payments), its "marketability" becomes relevant in determining "fair market value."  Annuities are, generally speaking, marketable assets. There are, of course, exceptions (e.g., some structured settlement annuities, lottery winnings, and survivor annuities under ERISA-qualified plans), but the existence of those exceptions highlights the difference in "value" between one and the other.  Though they might well be assets of identical present value, marketable and non-marketable annuities are not assets of identical fair market value.

Here, the parties have stipulated that the asset in question is an annuity.  Accordingly, it should be valued as such.  This court agrees with those that have concluded that: (1) by their very nature, the IRC annuity tables fail to take into account a "marketability" factor when determining an annuity's present

value; (2) whether an annuity is marketable or not influences
(perhaps substantially, perhaps not) its fair market value (as
distinguished from its present value); and (3) when an annuity is
non-marketable, that factor should be taken into account when
determining its fair market value for estate taxation purposes.

Nevertheless, based on the record presently before it, the
court cannot conclude, as a matter of law, that it is either
appropriate or inappropriate to use the IRC tables to determine
an approximate measure of the fair market value of the annuity in
question.  Consequently, the government's motion for partial
summary judgment (document no. 8), in which it seeks a judicial
determination that, as a matter of law, the IRC annuity tables
must be used to determine the value of the annuity at issue here,
is necessarily denied.  But, on the other hand, because both the
sufficiency of the proposed alternate valuation method and the
"true" fair market value of the annuity are genuinely disputed
material facts, the court cannot conclude, as a matter of law,
that use of the IRC annuity tables is <u>inappropriate</u> in this case.
Plaintiff's motion for partial summary judgment (document no. 7)
is, therefore, denied as well.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

December 19, 2005

cc:  Peter S. Black, Esq.
     Valerie Wright, Esq.
     William C. Knowles, Esq.
     Stephen T. Lyons, Esq.